UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SHARLEEN H.,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. C19-163 JCC

ORDER REVERSING AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS

Plaintiff seeks review of the denial of her application for Disability Insurance Benefits. Plaintiff contends the ALJ erred by rejecting her testimony and four medical opinions. Dkt. 11. As discussed below, the Court REVERSES the Commissioner's final decision and REMANDS the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

I.     BACKGROUND

Plaintiff is currently 62 years old and has worked as a grant writer, development director, and executive director. Dkt. 7, Admin. Record (AR) 70, 24. Plaintiff applied for benefits in July 2015, alleging disability as of January 1, 2014. AR 70. Plaintiff's application was denied initially and on reconsideration. AR 81, 96. After the ALJ conducted a hearing in May 2017, the ALJ issued a decision finding Plaintiff not disabled. AR 30-69, 11-24.

## II. THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ found that from the January 2014 alleged onset date through the December 2015 date last insured:

Step one: Plaintiff did not engage in substantial gainful activity.

Step two: Plaintiff had the following severe impairments: mild degenerative disc disease, arthritis, fibromyalgia, and chronic fatigue syndrome.

Step three: These impairments did not meet or equal the requirements of a listed impairment.[2]

Residual Functional Capacity: Plaintiff could perform light work, standing and/or walking six hours and sitting six hours per day. She could not climb ladders, ropes, or scaffolds and could occasionally climb ramps and stairs. She could frequently handle, finger, and stoop, and occasionally kneel, crouch, and crawl. She must avoid excessive vibration and concentrated pulmonary irritants or hazards.

Step four: Plaintiff can perform past relevant work as a grant writer and an executive director, as generally performed.

Step five: The ALJ did not reach step five.

AR 13-24. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. AR 1-3.

## III. DISCUSSION

This Court may set aside the Commissioner's denial of Social Security benefits only if the ALJ's decision is based on legal error or not supported by substantial evidence in the record as a whole. *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for evaluating evidence and resolving conflicts.

---

[1] 20 C.F.R. § 404.1520.
[2] 20 C.F.R. Part 404, Subpart P, Appendix 1.

ORDER REVERSING AND REMANDING
FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 2

*Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the ALJ. *Thomas v. Barnhart*, 278 F.3d 947, 954, 957 (9th Cir. 2002). When the evidence is susceptible to more than one interpretation, the ALJ's interpretation must be upheld if rational. *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005). This Court "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

### A. Medical Opinions

A treating physician's opinion is generally entitled to greater weight than an examining physician's opinion, and an examining physician's opinion is entitled to greater weight than a nonexamining physician's opinion. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). An ALJ may only reject the uncontradicted opinion of a treating or examining doctor by giving "clear and convincing" reasons. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). Even if a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by stating "specific and legitimate" reasons. *Id.* The ALJ can meet this standard by providing "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citation omitted). "The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998).

"Only physicians and certain other qualified specialists are considered '[a]cceptable medical sources.'" *Ghanim v. Colvin,* 763 F.3d 1154, 1161 (9th Cir. 2014) (alteration in original); *see* 20 C.F.R. § 404.1502(a), (d), (e). An ALJ may reject the opinion of a non-acceptable medical source by giving reasons germane to the opinion. *Id.* An ALJ must consider

ORDER REVERSING AND REMANDING
FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 3

all opinions, including those from non-acceptable medical sources, which may in some cases even outweigh the opinions of acceptable medical sources. *See* 20 C.F.R. § 404.1527(f).

### 1. Bruce Duthie, Ph.D.

In September 2015, Dr. Duthie examined Plaintiff and wrote a Psychological Report, opining that she had intact memory, fund of knowledge, abstract thinking, insight, judgment, impulse control, and intellectual functioning. AR 311. He also wrote that "[s]he has significant medical problems, which seem to affect her ability to work on a consistent basis without fatigue[,]" and "her medical conditions … should be evaluated by the appropriate medical professional." AR 311, 310. Dr. Duthie opined Plaintiff had no disabling psychological limitation, and deferred to appropriate medical professionals regarding any physical limitations.

Plaintiff argues that Dr. Duthie's evaluation confirms "the severe impairment of depression." Dkt. 13 at 4. Dr. Duthie diagnosed major depressive disorder, but opined that "depression does not significantly impair her prognosis…." AR 310. While Dr. Duthie's report may establish depression as a medically determinable impairment, it expressly finds that it is not a severe impairment.

Any error in discounting Dr. Duthie's opinions is harmless because Dr. Duthie did not opine any limitation not included in the RFC. *See Molina*, 674 F.3d at 1117 (error harmless if "inconsequential to the ultimate disability determination").

### 2. Kimberly Allen, N.D.

Plaintiff's treating provider, Dr. Allen, opined in December 2015 that fibromyalgia and chronic fatigue syndrome made Plaintiff "incapable of working at any typical job at this time" because she "cannot do any more than 2 hours of work [in] a day in small chunks of time interspersed with lying down to rest." AR 390. Dr. Allen also filled out a Fibromyalgia Medical

Source Statement and a Chronic Fatigue Syndrome Medical Source Statement. AR 429-33, 434-38. She opined pain would constantly interfere with Plaintiff's attention and concentration during a work day and Plaintiff was incapable of even "low stress" jobs. AR 430, 436. Plaintiff required the ability to sit, stand, or walk at will, and every 30 minutes she would need to lie down for 10 minutes. AR 431, 436-37. She could occasionally lift 10 pounds or less. AR 432, 437. She could reach or handle 10% of the day with her right arm and 5% with her left, and could never finger. AR 432, 437. Plaintiff would be absent from work more than four days per month due to her impairments and treatment. AR 432, 428. In May 2016, Dr. Allen wrote a letter opining that Plaintiff "is permanently disabled." AR 439.

The ALJ gave Dr. Allen's 2015 opinions "limited weight" on the grounds that "she did not provide objective basis" because her opinions were "internally inconsistent." AR 22. The forms Dr. Allen filled out defined "occasionally" as "6% to 33% of an 8-hour working day." AR 430, 436. The ALJ reasoned that reaching or handling only 10% of a workday was inconsistent with lifting up to 33% of the day because "lifting requires reaching and handling." AR 22. The ALJ provided no authority for this view. The *Dictionary of Occupational Titles*, on which Social Security regulations rely, assesses lifting, reaching, and handling separately. There is no support for the ALJ's view that the amount of lifting must be less than or equal to the amount of reaching and handling. That Dr. Allen opined less reaching and handling than lifting was not a germane reason to discount her opinions.

The ALJ also found the limitation to reaching or handling 10% of the workday, or 6 minutes per hour for a total of 48 minutes, inconsistent with Plaintiff's reported activities. AR 22. Plaintiff testified she could type up to two hours per day, although "that would be all [she] could do that day." AR 49. But Dr. Allen was asked to opine "limitations if [Plaintiff] were

placed in a *competitive work situation*." AR 431, 436 (emphasis in original). To maintain competitive work, Plaintiff would need to complete self-care and the necessary activities of daily living in addition to the occupational activities Dr. Allen opined. Plaintiff testified that if she typed two hours in one day, other than eating and using the bathroom she "wouldn't be able to do anything else," even take a shower. AR 49, 57. Plaintiff's testimony did not contradict Dr. Allen's opinions, and thus was not a germane reason to discount them.

The ALJ erred by discounting the opinions of treating provider Dr. Allen.

### 3. Dr. Allen and Caroline Brinkley, M.D.

In August 2016, Dr. Allen and her colleague Dr. Brinkley signed a letter establishing the diagnoses of fibromyalgia and chronic fatigue syndrome. AR 442-44. The ALJ gave these opinions "little weight" because they were unsupported by objective findings and because the opinion was dated eight months after the date last insured. AR 22-23. However, the ALJ accepted fibromyalgia and chronic fatigue syndrome as severe impairments at step two. AR 13. Even if the ALJ erred by rejecting these opinions, Plaintiff has not established that the error is harmful.

### 4. Deepika Arora, M.D.

Treating rheumatologist Dr. Arora diagnosed Plaintiff with fibromyalgia. AR 294, 607. Plaintiff argues the ALJ erred by failing to "fully credit" Dr. Arora's "findings" and the error is harmful because they "provide an objective evidentiary basis" for the diagnosis of fibromyalgia and Plaintiff's testimony. Dkt. 13 at 5, 4. But the ALJ found fibromyalgia a severe impairment. Plaintiff has not shown any harmful error.

### 5. Kim Farrell, M.D.

Dr. Farrell, Plaintiff's treating physician since May 2017, opined in August 2017 that

Plaintiff "suffers from profound chronic fatigue syndrome which precludes her from engaging in gainful employment." AR 613. The ALJ gave this opinion "little weight" because both the opinion and the treating relationship began well over a year after the date last insured. AR 23. Plaintiff argues the ALJ erred because the date "does not prove that this opinion does not relate back to prior to" the date last insured. Dkt. 11 at 9. This is a misunderstanding of the evidentiary standard that applies in Social Security cases. That Plaintiff reported her condition worsened after the date last insured, together with the fact that Dr. Farrell's opinion was given one and a half years after the date last insured, was substantial evidence that Dr. Farrell's opinion did not reflect Plaintiff's condition during the relevant period. *See* AR 50, 249. Even if other interpretations of the record are possible, the ALJ's rational interpretation must be upheld. *Burch*, 400 F.3d at 680-81. This was a specific and legitimate reason to discount Dr. Farrell's opinion, and the ALJ did not err by discounting it.

### B. Plaintiff's Testimony

In a 2015 Function Report, Plaintiff alleged she was unable to work due to lack of focus, painful hands and feet, pain, insomnia, fatigue, and depression. AR 216. She wrote that standing and walking were hard, but sitting hurt her back. *Id*. At the 2017 hearing, Plaintiff testified that beginning in January 2014, she had half her normal energy and became confused easily. AR 37, 47. She could answer short questions but could not hold a detailed question in mind long enough to answer it. AR 47-48. During 2015 Plaintiff was in excruciating pain and spent a lot of time in bed. AR 40. She could only engage in any activity, including sitting down and typing, for two hours per day total. AR 40-41. She would be able to type, or clean her house, for two hours a day, but would be unable to do anything else that day. AR 49, 51. She needed to sleep four hours during the day. AR 46. Plaintiff's fingers were swollen in the

morning and painful throughout the day.  AR 48.  The same thing happened to her toes, which limited walking due to balance problems.  AR 48.

Where, as here, an ALJ determines a claimant has presented objective medical evidence establishing underlying impairments that could cause the symptoms alleged, and there is no affirmative evidence of malingering, the ALJ can only discount the claimant's testimony as to symptom severity by providing "specific, clear, and convincing" reasons that are supported by substantial evidence.  *Trevizo*, 871 F.3d at 678.  The ALJ discounted Plaintiff's testimony because her statements and activities contradicted her testimony and she stopped working for reasons unrelated to disability.  AR 19-21.  The ALJ also discounted Plaintiff's testimony as out of proportion to the objective evidence, but symptom testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence.  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see* AR 19, 21.  This is particularly true with fibromyalgia, whose sufferers may have normal muscle strength, sensory functions, reflexes, and joints.  *See Revels*, 874 F.3d at 656.

"Factors that an ALJ may consider in weighing a claimant's credibility include … inconsistencies in testimony [and] daily activities…."  *Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007).

1. Inconsistent Statements

In April 2015 Plaintiff reported "significant reduction in joint pain and swelling" from prednisone, a steroidal medication.  AR 340.  But on May 4 she reported the "prednisone did not really make a difference" although her joints were less painful after taking turmeric and bromelain.  AR 337.  On May 18 she reported things were "getting worse again.  Her pain is increased with no relief from" non-steroidal medication.  AR 334.  In June Plaintiff reported a

ORDER REVERSING AND REMANDING
FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 8

non-steroidal medication gave her "temporary relief from her joint pain and fatigue" lasting about six hours. AR 329. On September 3, Plaintiff reported she "continues to have severe joint pain and unrelenting fatigue." AR 322. On September 8 Plaintiff denied joint pain, however, this was an appointment with a digestive specialist. AR 305. Plaintiff continued to report high levels of pain through 2015. *See*, *e.g.*, AR 509, 246. In context, Plaintiff's reduction in symptoms was temporary and minor, and did not contradict Plaintiff's testimony.

Inconsistent statements did not provide a clear and convincing reason to discount Plaintiff's testimony.[3]

### 2. Activities

The ALJ discounted Plaintiff's testimony because until December 2015 she swam and could walk to the grocery store, and "a few months" before then was able to walk a mile and recover within a day. AR 20 (citing AR 540). The ALJ also cited self-care activities that required reaching and handling, such as brushing teeth, bathing, light home care, and shopping. AR 20. But none of these activities contradict Plaintiff's testimony that she can only engage in activities for two hours per day. Plaintiff reported 20 to 30 minutes of activity to go to the store. AR 219. She testified she can spend up to two hours cleaning, but do nothing else that day except eat and use the bathroom. AR 51, 56-57. Plaintiff's activities were not a clear and convincing reason to discount her testimony.

### 3. Work History

The ALJ discounted Plaintiff's claims of disabling depression because she reported depression since 1997, worsened since her son's death in 2010, but continued to work until 2013.

---

[3] The ALJ also cited a lack of atrophy or weight gain, without any support from the record or other authority regarding how or when Plaintiff's activity level would be expected to produce those conditions. AR 20. The Commissioner does not defend this reason and thus appears to concede it is erroneous.

AR 21 (citing AR 309). This was a sufficient reason to discount an allegation that Plaintiff's depression alone was disabling. However, the Commissioner attempts to more generally cast doubt on Plaintiff's disability application on the ground that she stopped working because the work tapered off. Dkt. 12 at 4. The ALJ's decision does not contain such an analysis and the Commissioner's contention is thus an improper *post hoc* argument upon which the Court cannot rely. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 1995).

Work history was not a clear and convincing reason to discount all of Plaintiff's testimony.

The ALJ erred by discounting Plaintiff's testimony without providing a clear and convincing reason.

**C.     Scope of Remand**

Plaintiff requests the Court remand for an award of benefits or, in the alternative, for further administrative proceedings. Dkt. 11 at 17-18. Remand for an award of benefits "is a rare and prophylactic exception to the well-established ordinary remand rule." *Leon v. Berryhill*, 880 F.3d 1041, 1044 (9th Cir. 2017). The Ninth Circuit has established a three-step framework for deciding whether a case may be remanded for an award of benefits. *Id.* at 1045. First, the Court must determine whether the ALJ has failed to provide legally sufficient reasons for rejecting evidence. *Id.* (citing *Garrison*, 759 F.3d at 1020). Second, the Court must determine "whether the record has been fully developed, whether there are outstanding issues that must be resolved before a determination of disability can be made, and whether further administrative proceedings would be useful." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014) (internal citations and quotation marks omitted). If the first two steps are satisfied, the Court must determine whether, "if the improperly discredited evidence were credited as true, the ALJ

would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020. "Even if [the Court] reach[es] the third step and credits [the improperly discredited evidence] as true, it is within the court's discretion either to make a direct award of benefits or to remand for further proceedings." *Leon*, 880 F.3d at 1045 (citing *Treichler*, 773 F.3d at 1101).

Plaintiff asserts, without any support or argument whatsoever, that all three parts of the test are met. Dkt. 11 at 18; Dkt. 13 at 10. Plaintiff asserts that "if this Court credits as true" the challenged opinions and testimony, she must be found disabled. Dkt. 13 at 10. "This is an erroneous reading of [Ninth Circuit] case law, which requires [the Court] to assess whether there are outstanding issues requiring resolution *before* considering whether to hold that the [improperly discredited evidence] is credible as a matter of law." *Treichler*, 775 F.3d at 1105 (emphasis in original). Plaintiff has not shown that all outstanding issues are resolved.

The Court concludes that enhancement of the record would be useful and, accordingly, remand for further proceedings is appropriate.

IV. CONCLUSION

For the foregoing reasons, the Commissioner's final decision is REVERSED and this case is REMANDED for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

On remand, the ALJ should reconsider Dr. Allen's 2015 opinions and Plaintiff's testimony, reassess the RFC as appropriate, and proceed to steps four and five as needed.

DATED this 30th day of December, 2019.

*[signature: John C. Coughenour]*
John C. Coughenour
UNITED STATES DISTRICT JUDGE